UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HAMID VOSSOUGH,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | No. ED CV 13-02207-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

    This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court

concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

Plaintiff raises the following issue:

1. Whether the Administrative Law Judge ("ALJ") properly considered the treating physician's opinion.

**THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN REGARDING PHYSICAL AND MENTAL ISSUES WAS IMPROPERLY REJECTED BY THE ALJ**

A. **Procedural History**.

Plaintiff initially filed his application for Supplemental Security Income ("SSI") payments on October 6, 2006. (AR 61.) After administrative denials, he had a hearing before an ALJ on September 17, 2008 during which the ALJ took testimony from Plaintiff, a VE and a medical expert ("ME"). (AR 33-60.) This resulted in an unfavorable decision issued on October 22, 2008. (AR 61-74.) In that decision, the ALJ noted that the ME concluded that Plaintiff suffered from degenerative disc disease of the lumbar spine as well as depression and anxiety disorders. (AR 68.) The ME also concluded that Plaintiff was capable of a "limited range of light exertion." (AR 68.) The ALJ also considered the internal medicine consultative examination ("CE") of Dr. Lin in which Dr. Lin determined that Plaintiff had a limited range of motion at the lumbar spine and thus could perform light exertion with occasional bending. (AR 69.) The ALJ gave more weight to the ME who reviewed the entire medical record. (AR 69.) Dr. Lin also administered a second internal medicine CE which produced no new findings other than a limited range of motion in the right shoulder. (AR 69.) Dr. Lin came to the same conclusion: Plaintiff was capable

of light exertion with "preclusions from frequent overhead activities with the right upper extremity." (AR 69.)

The ALJ also noted that Plaintiff had been treated for chest pain but that the cardiologist doubted there was cardiac scarring. (AR 70.) The ALJ also acknowledged that Plaintiff suffered from mild left carpal tunnel syndrome but noted that nerve studies failed to show evidence of any significant impairment. (AR 70.)

With regard to psychological issues, the ALJ noted that Plaintiff was only on "mild" anti-depressant medication. Plaintiff underwent a psychiatric CE by Dr. Linda Smith, who noted that Plaintiff was pleasantly and neatly groomed and interacted well. (AR 70.) Dr. Smith diagnosed Plaintiff with a depressive disorder, NOS, an anxiety disorder, NOS and assigned a GAF of 65. Dr. Smith concluded that Plaintiff had either no or mild impairments impacting his ability to work. (AR 70.) Dr. Smith conducted a subsequent examination, drew the same conclusions, and assigned a GAF of 64.

The ALJ noted that Plaintiff lives by himself and does a wide range of household chore: he cooks, dresses and cleans himself, and drives a car. The ALJ noted that at the hearing, Plaintiff appeared very healthy. (AR 71.) The ALJ also considered two Third Party Function Reports submitted by Carla Kuhn, Plaintiff's friend and neighbor. She opined in one that she spent four hours a day with Plaintiff running errands, helping him get to appointments, and assisting him as needed (AR 71.) She stated that on a good day physically, he could lift twenty pounds. (AR 71.) In her second report, Ms. Kuhn stated she spent five hours a week with Plaintiff. (AR 72.) She noted that he spent a majority of his time watching television and visiting with various family members. (AR 72.) She

also stated that he regularly went to the market and attended his doctor's appointments. (AR 72.) The ALJ found little credibility in these statements noting that Ms. Kuhn is only a lay witness and her statements were not supported by the medical evidence. (AR 71.)

On November 9, 2010, Plaintiff filed another application for SSI. After administrative denials, Plaintiff had a hearing on August 31, 2012 during which the ALJ took testimony from Plaintiff and a VE. This resulted in an adverse decision which is the subject of this current litigation. In this unfavorable decision, the ALJ noted that Plaintiff testified that mental impairments were causing him the most serious limitations. (AR 92.) Plaintiff stated he had both auditory and visual hallucinations which made it difficult to sustain concentration. (AR 92.)

The ALJ placed doubt on Plaintiff's credibility because he stated the medical record detailed very limited findings and Plaintiff only sought very conservative treatment. (AR 93.) The ALJ placed significant weight on the State agency physical consultant who determined that Plaintiff could perform a range of medium work. (AR 93-94.) The ALJ gave no weight to the letter from Plaintiff's treating physician, stating in pertinent part:

> "The undersigned also considered, but gave no weight to the letter from Febbis Balinos, M.D., a treating physician who opined that the claimant's mental impairments "are severe enough to interfere with concentration and focus, as such he is unable to do any part-time or full-time competitive work" (Exhibit B11F). This is so for many reasons. First, determining disability is an issue reserved to the Commissioner (20 C.F.R. 416.927(e) and Social

4

>   Security Ruling 96-2p), and any statement by a medical source that the claimant is "disabled" or "unable to work" does not mean that a claimant will be determined to be disabled as that term is defined in the Act (20 C.F.R. 416.927(e)(1) and Social Security Ruling 96-2p). Additionally, although Dr. Balinos essentially stated that the claimant is vocationally "disabled," it is not clear that Dr. Balinos is familiar with the definition of disability as contained in the Social Security Act and regulations. Dr. Balino's [sic] blanket statement regarding the claimant's purported disability is also conclusory and does not detail the specific limitations of the claimant's conditions, nor does it list the objective medical findings upon which Dr. Balinos based the opinion. Lastly, it is also inconsistent with the medical records, which detail relatively unremarkable symptoms, and a routine and conservative treatment regimen consistent with those symptoms."

(AR 94.)

The ALJ gave limited weight to the psychiatric consultative examiner, Dr. Rathana-Nakintara, who determined that Plaintiff had major depressive disorder, recurrent with psychotic features but concluded that Plaintiff would have no trouble completing a normal workday. (AR 94, 378-379.) Instead, the ALJ gave Plaintiff the benefit of the doubt that his symptoms were sufficiently serious to cause moderate functional limitations, and concluded the mental impairment was severe. (AR 94.)

**B.  Applicable Law**.

    **1.  Treating Physician's Opinion**.

The Ninth Circuit has reaffirmed and strengthened its long-articulated view that treating physicians' opinions are entitled to substantial deference. Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007) concerned, in part, an ALJ's rejection of reports completed by Mr. Orn's two treating physicians, and the ALJ's reliance, instead, on the opinion of a consulting physician. Citing 20 C.F.R. §404.1527, the Opinion begins by reiterating the often-stated concept that, "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (Id. at *4.) Indeed, the Court notes that under that same regulation, if the treating physician's opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case, it will be given controlling weight. (Id., citing 20 C.F.R. §404.1527(d)(2).) The Court also noted SSA's explanation of the ramifications of 20 C.F.R. §404.1527 in Social Security Ruling ("SSR") 96-2p, which provides that even in a case in which the treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight, but in many cases, will still be given the greatest weight and should be adopted. (Id. at *5.)

Citing its prior opinion in Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), the Court reiterated that in cases in which the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. (Id. at *6, citing Reddick, 157

F.3d at 725.)  In addition, only if there is substantial evidence in the record which contradicts the opinion of the treating physician is that opinion no longer entitled to controlling weight. (See Id., citing 20 C.F.R. §404.1527(d)(2).

### 2. **Evaluation of Mental Health Issues**.

In evaluating psychiatric impairments, 20 C.F.R. §404.1520a(e)(1) and §416.920a(e)(1) require that consideration be given, among other things, to activities of daily living ("ADL"); social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require that consideration be given to "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to chronic mental disorders, structured settings, medication and other treatment."

20 C.F.R. §§404.1545(c) and 416.945(c) require that consideration be given to "residual functional capacity for work activity on a regular and continuing basis" and "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, [which] may reduce your ability to ... work."

The types of relevant evidence to be assessed in making these considerations are set forth in Social Security Ruling ("SSR") 85-16, which include such factors as history, findings, and observations from medical sources, reports of the individual's activities of daily living and work activity, as well as testimony of third parties about

the individual's performance and behavior.

Under 20 C.F.R. §404.1520a(c)(2) and §416.920a(c)(2), consideration must be given to the extent to which a mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis ..."

The degree of functional limitations in four broad areas (ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation) are evaluated; that is, as to the first three functional areas, the following five-point scale is utilized: none, mild, moderate, marked, and extreme. With regard to the fourth area, a four-point scale is utilized: none, one or two, three, four or more. (20 C.F.R. §§416.920a(3),(4) and 404.1520a(c)(3),(4).

Following the September 2000 amendments to the regulations which modified 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the Administrative Law Judge ("ALJ") is no longer required to complete and attach a Psychiatric Review Technique Form ("PRTF"). Instead, these regulations require that in the decision, the ALJ,

> "[M]ust incorporate the pertinent findings and conclusions based on the [PRTF] technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." [That is, ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation.]

Further guidance is provided in SSR 85-16, which, although it does not specifically mention concentration, persistence or pace, does note, "Ability to sustain activities, interests, and relate to others over a period of time. The frequency, appropriateness, and independence of the activities must also be considered" as well as "ability to function in a work-like situation."

When there is a finding of "moderate" difficulties in the area of maintaining concentration, persistence or pace, this factor must be included in any hypothetical question posed at a hearing to a vocational expert ("VE"). Thus, one court has held that referring merely to "simple jobs" or "unskilled sedentary work" in a hypothetical question is insufficient to describe and to accommodate difficulties in this functional area. See Newton v. Chater, 92 F.3d 688 (8th Cir. 1996).

The regulations do not provide a standard definition of "moderate." (See 20 C.F.R. §416.902a(c)(4).) They do note, however, that a finding of "none" or "mild" in the first three areas "will generally [mean] that your impairment(s) is not severe, ..." See 20 C.F.R. §920a(d)(1).

### 3. General Assessment of Functioning ("GAF").

The GAF scale is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (See 20 C.F.R. §§416.905, 416.920(c)(2006).)

GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the severity assessment set forth in Social Security regulations. (See Revised Medical

Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 33 (4th Ed. 2000).

### C. Analysis

The ALJ rejected the opinion of the treating doctor (Dr. Balinos) for four reasons: 1) determining disability is an issue reserved to the Commissioner; 2) Dr. Balinos is not familiar with the definition of disability as contained in the Social Security Act and regulations; 3) Dr. Balinos' blanket statement regarding Plaintiff's purported disability is also conclusory and does not detail the specific limitations of Plaintiff's conditions, nor does it list the objective medical findings upon which Dr. Balinos based the opinion; 4) The opinion is inconsistent with the medical records, which detail relatively unremarkable symptoms, and a routine and conservative treatment regimen consistent with those symptoms. The Court will address these reasons in turn.

#### 1. Determining Disability Is an Issue Reserved for the Commissioner.

The ALJ was correct in concluding that the ultimate decision regarding disability is one that only the Commissioner can make. Nevertheless, even if Dr. Balinos' statement was understood as rendering a disability determination, this does not invalidate the opinion in its entirety. See Reddick v. Chater, 157 F.3d 715, 725 ("In disability benefit cases such as this, physicians may render ... opinions on the ultimate issue of disability – the claimant's ability

to do work"). The ALJ must still provide "specific, legitimate reasons" for rejecting the treating doctor's opinion. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

### 2. Dr. Balinos Is Unfamiliar with the Definition of Disability as Defined by the Social Security Act and Regulations.

The ALJ may have been correct when he stated that the treating doctor was not familiar with the definition of disability in the Social Security context. However, this was not sufficient to reject her opinion that Plaintiff suffered from certain conditions which prevented him from focusing and concentrating. As Dr. Balinos' letter made clear, she had been treating Plaintiff since October, 28, 2010, and Plaintiff had been treated at a satellite clinic since October, 17 2006. Thus, the treating doctor had a well-established relationship with Plaintiff which rendered her capable of opining on Plaintiff's mental functional limitations. Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)(holding that a treating relationship provides a 'unique' perspective in part because it develops over a long period of time)(citation omitted). See 20 C.F.R. §404.1527(c)(2).

### 3. Dr. Balinos' Blanket Statement Regarding Plaintiff's Purported Disability Is Conclusory and Does Not Detail the Specific Limitations of Plaintiff's Conditions, Nor Does it List the Objective Medical Findings upon Which Dr. Balinos Based the Opinion.

While Dr. Balinos' statement is brief, it does in fact state a specific limitation, ("He has symptoms severe enough to interfere with

11

concentration and focus... .") and lists Plaintiff's diagnoses, including but not limited to paranoid schizophrenia and insomnia. (AR 382.) Based on her interactions with Plaintiff, Dr. Balinos concluded that Plaintiff had severe concentration and focus problems.[1]

The Ninth Circuit has held that a doctor's statement that is brief and conclusory, with little support in the record can be dismissed. Young v. Heckler, 803 F.2d 963 (9th Cir. 1986). This is not one of those situations. The record includes at least six different visits by Petitioner to Dr. Balinos. For example, in the earliest record, dated October 29, 2010, x-rays showed Plaintiff had mild multi-level degenerative disk disease which is noted in Dr. Balinos' statement. In the later records, Dr. Balinos made notes regarding Plaintiff's continuous depression, his issues with high blood pressure, and detailed his issues related to schizophrenia. All of these records are consistent with what Dr. Balinos wrote in her letter. Thus, Dr. Balinos' statement is substantially supported by the evidence in the record. Plaintiff's treatment by Dr. Balinos was in conjunction with the treatment by psychiatrist Dr. Montenegro, a fact Dr. Balinos noted in her letter, but a fact that the ALJ did not address.

---

[1] Curiously, despite outright rejecting Dr. Balinos' findings, the ALJ concluded that Plaintiff has moderate difficulty with concentration, persistence or pace (AR 91.) Whether this finding is consistent with Dr. Balinos' opinion is unknown, because the record is undeveloped (see infra). Moreover, despite concluding that Plaintiff has "moderate" difficulties with concentration, persistence, or pace, the ALJ dismissed the effect of this limitation based solely on his own observations of Plaintiff at the administrative hearing. (Id.) As will be discussed infra, the ALJ's reliance on his lay observations, combined with his inappropriate rejection of Dr. Balinos' conclusion, and his lack of analysis of the mental health treating records, constitutes reversible error.

It is clear that Dr. Balinos was rendering her opinion based on her notes as well as other medical and psychiatric treatment Petitioner was receiving. Thus, either the ALJ failed to read Dr. Balinos' and Dr. Montenegro's notes or he failed to give them adequate consideration when determining the reliability of the doctor's letter. Either way, it is inaccurate for the ALJ to have concluded that the treating physician's letter was conclusory or that it did not detail any specific limitations.

**4. The Opinion Is Inconsistent with the Medical Records, Which Detail Relatively Unremarkable Symptoms, and a Routine and Conservative Treatment Regimen Consistent with Those Symptoms.**

While an ALJ may determine that a treating physician's opinion is inconsistent with the medical records, it is necessary that the ALJ directly identify and discuss those records. See Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986) (holding the ALJ can fulfill his obligation "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").

In this case, the ALJ failed to identify and discuss such records. He further gave "limited weight" to the psychological CE. Other than this statement, this Court, as the reviewing Court, has no basis to determine what, if any, aspects of the psychiatric CE were found to be credible. Consequently, there is no evidence in the record upon which the ALJ could have relied to dispute Dr. Balinos' conclusions, other than the ALJ's own lay observations of Plaintiff, which are an insufficient basis upon which to form a conclusion as to

13

mental functional capacity. See <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985)(per curiam) (holding that an ALJ may not base an adverse credibility finding solely on his perceptions of claimant at the hearing). In this case, the ALJ noted that Plaintiff did not manifest any difficulty concentrating during the hearing. This lay observation is not sufficient. See <u>Taylor v. Commissioner of Social Sec. Admin.</u>, 659 F.3d 1228, 1235 (9th Cir. 2011)(holding ALJ's observations of excellent cognitive abilities at hearing were not substantial evidence for rejecting a treating physician's opinion.)

As mentioned previously, Dr. Balinos' letter stated that while she had been treating Plaintiff since October 2010, he had been seen at the satellite office since October 2006. It is possible, even likely, that these records may document mental health treatment. However, the record is void of any notes before 2009.

The ALJ has a special duty to further develop the record. The law in this area has often been referred to in various Ninth Circuit decisions, perhaps most succinctly in the following discussion in a recent case:

> "The ALJ in a social security case has an independent '"duty to fully and fairly develop the record and to assure that the claimant's interests are considered."' <u>Smolen</u>, 80 F.3d at 1288 (quoting <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. <u>Id</u>. ... <u>Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'</u> ... The ALJ may discharge this duty in several ways,

1    including: subpoenaing the claimant's physicians, submitting
2    questions to the claimant's physicians, continuing the
3    hearing, or keeping the record open after the hearing to
4    allow supplementation of the record. Tidwell v. Apfel, 161
5    F.3d 599, 602 (9th Cir. 1998); Smolen, 80 F.3d at 1288."
6 (Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(emphasis
7 added.))

The ALJ rejected the treating doctor's letter which unambiguously stated that Plaintiff had been treated since at least 2006.[2] The ALJ had a duty to develop the records related to Plaintiff's care between 2006-2009.

In his decision, the ALJ determined that Plaintiff had "moderate" difficulties with concentration, persistence or pace. It is unclear, however, on what evidentiary basis the ALJ made this determination. It is also unclear how this determination compared to Dr. Balinos' opinion because the ALJ failed to adequately develop the record regarding Plaintiff's concentration issues, either by inquiry to the treating physician or by obtaining an ME to testify at the hearing. Halter, 242. F.3d at 1150.

Next, the ALJ found that the treating physician's analysis was inconsistent in light of the "routine and conservative" treatment sought by Plaintiff; however, the ALJ offered no basis in the record for this determination. Instead he resorted to a conclusory

---

[2] The Court notes that, Dr. Rathana-Nakintara, a psychological consultant who examined Plaintiff on September 10, 2011, noted that Plaintiff stated he had been seeking psychiatric treatment on and off for the past 20 years. (AR 376.) This buttresses the likelihood that the absent records will document mental health treatment.

statement: "Given the allegations of such severe and disabling impairments, one might expect to see a greater level of intervention and/or more aggressive treatment options." (AR 93.) While it is appropriate for an ALJ to reject a treating physician's opinion in light of a conservative treatment plan, there has to be a basis in the record for such a finding. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (consideration of minimal and conservative treatment). Here, other than the ALJ's observations, there was no evidentiary basis for this conclusion.

Moreover, the ALJ misstated the record in two major respects. First, he asserted that Plaintiff began seeking treatment for his depression in March 2011. This was erroneous. In the first opinion in this case, (dated October 22, 2008), the original ALJ clearly stated that Plaintiff had been diagnosed with a depression disorder and had been receiving treatment from a physician. (AR 70.) Further, the treating physician's note, dated April 18, 2011, states that Plaintiff has been battling depression for two and a half years. (AR 389.) These two records, combined with Plaintiff's own statement that he has been seeking psychiatric treatment for the past twenty years, make it clear that Plaintiff was treated for depression well before March 2011; however, the ALJ used the March 2011 date as an evidentiary basis to conclude that Plaintiff's treatment was "conservative and routine."

Second, the ALJ erroneously reported that Plaintiff only sought "periodic medication monitoring ... on July of 2011, January 2012, and April of 2012." (AR 93.) The dates correspond to three dates during which Plaintiff was seen by the treating physician (AR 384-388.); however, the record again shows, and the treating physician's letter

16

clearly states, that Plaintiff was being seen by a psychiatrist during this time as well. The records detail at least eight visits to a psychiatrist occurring approximately every two months between April of 2011 and May of 2012. (AR 397-407.) The ALJ disregarded these records, including an Axis I diagnosis of severe depression recurring with psychotic features.

In sum, there is no basis in the record for the ALJ's characterization of "conservative and routine treatment." Finally, no report in the record, including the record of Dr. Rathana-Nakintara, indicates that Plaintiff's treatment was conservative or minimal.

This Court thus concludes that there was not a substantial basis in the evidence on which to conclude that the treating physician's opinion should have been disregarded.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: July 2, 2014                    /s/
                                       VICTOR B. KENTON
                                       UNITED STATES MAGISTRATE JUDGE